**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DAVID D. MORRIS, III,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LATOYA HUGHES, MATTHEW PLUMMER, ANTHONY WILLS, ANDREW SMITH, DEREK BRANDT, JOHN DOE LIEUTENANT, JEREMY DEMOND, and CENTURION HEALTH SERVICES,**[1]<br><br>**Defendants.** | **Case No. 26-cv-438-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff David D. Morris, III, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The matter is currently before the Court on Morris's motion for temporary restraining order and preliminary injunction (Doc. 32). Defendants Latoya Hughes, Matthew Plummer, Derek Brandt, Andrew Smith, Jeremy Demond, and Anthony Wills filed a response (Doc. 50) in opposition to the motion.

[1] Derek Brandt, Andrew Smith, and Jeremy Demond have now identified themselves by their proper names. The Clerk of Court is **DIRECTED** to **CORRECT** the docket to reflect Defendants' proper names.

## Background

Morris initially filed a Complaint (Doc. 5) and then a First Amended Complaint (Doc. 18) alleging various constitutional violations that he experienced while at Pinckneyville and Menard Correctional Centers. The First Amended Complaint was dismissed for failure to state a claim and for issues with joinder (Doc. 19). Morris subsequently filed a Second Amended Complaint, but this pleading also suffered from the same joinder issues as the First Amended Complaint. Morris sought to bring numerous, unrelated claims against a number of officials at both Pinckneyville and Menard (Doc. 22). His pleading was stricken, and he was directed to file a pleading focused only on related claims (Doc. 25). Morris subsequently re-filed his Second Amended Complaint (Doc. 26), and the pleading was again stricken (Doc. 29).

Morris finally filed a Third Amended Complaint that focused solely on his conditions of confinement at Menard (Doc. 31). After review of the pleading pursuant to 28 U.S.C. § 1915A, Morris was allowed to proceed on the following counts:

Count 1: Eighth Amendment conditions of confinement claim against Latoya Hughes, Matthew Plummer, Anthony Wills, Andrew Smith, Derek Brandt, John Doe Lieutenant, and Major Jeremy Demond for Morris's cell conditions and lack of out-of-cell activities while at Menard Correctional Center.

Count 2: Eighth Amendment deliberate indifference to mental health needs against Latoya Hughes, Matthew Plummer, Anthony Wills, Derek Brandt, Major Jeremy Demond, and John Doe Lieutenant for limiting Morris's access to mental health services at Menard.

Count 3: *Monell* claim against Centurion Health Services for maintaining a policy of limiting access to mental health care while in segregation.

(Doc. 33, p. 9).

In addition to his Third Amended Complaint, Morris filed a motion for temporary restraining order and preliminary injunction (Doc. 32). Morris alleges that he is currently housed in Menard's North 2 cellhouse and lacks access to the yard and most out-of-cell activities (Doc. 33, p. 9). His cell is too small to perform any physical activities and is dirty, rusty, and lacks adequate ventilation (*Id.*; Doc. 32, p. 9). He also faces additional limitations on his movement due to his Elevated Security Risk ("ESR") status (*Id.*). As a result, Morris alleges he is housed in his cell for nearly 24 hours each day. Even when he leaves his cell, he is required to wear multiple restraints and is escorted by several officers (Doc. 32, p. 8). Morris's motion alleges that he has been housed in near total isolation in his cell for the last eight months (Doc. 32, p. 2; Doc. 33, p. 10). He also alleges that his cell contains a bug-infested mattress that is no longer fit for use (Doc. 32, p. 3). As a result, he suffers from back and muscle pain, headaches, dizziness, loss of mobility, and psychological issues including depression, anxiety, thoughts of suicide, and hallucinations (Doc. 32, p. 2).[2] Morris alleges that he has requested mental health treatment but has not received timely evaluations (*Id.* at p. 13). He seeks a medical and mental health evaluation, opportunities for exercise, and sanitary sleeping conditions (*Id.* at pp. 10-11).

---

[2] Although Morris's motion included additional allegations regarding a seizure disorder and retaliatory conduct of officers, those claims were either not identified in his amended pleading or failed to state a claim. His request for injunctive relief was limited to only those allegations regarding his conditions of confinement in North 2 (Doc. 33, p. 10 n. 4).

In response to Morris's motion, Defendants argue that Morris has failed to demonstrate a likelihood of success on the merits of his claims because he has access to recreational opportunities (Doc. 50). To support their argument, Defendants offer the declaration of Defendant Derek Brandt, a lieutenant who is familiar with Morris's placement in North 2 (Doc. 50-1, p. 1). Brandt notes that over the past eight months, yard lines have run once or twice a week, although he admits that there have been some weeks when there is zero yard due to staffing and security issues (*Id.*). Brandt maintains that Morris has the same opportunity to access the yard as any other individual and his ESR status does not restrict that access (*Id.*). Further, the frequency of yard opportunities has increased due to recent hiring of additional staff (*Id.*). Brandt notes that he has seen Morris on the yard on multiple occasions and has also observed him exercising in his cell (*Id.*). Brandt notes that the cells are six by eight feet and contain adequate space to exercise (*Id.* at p. 2). Finally, Brandt notes that he has viewed Morris's mattress and it is not infested with bugs (*Id.*).

Defendants also offer Morris's mental health records for most of 2026 (Doc. 50-2, p. 5). Morris has been seen in his cell on numerous occasions for mental health evaluations (*Id.* at pp. 1-2, 29-34, 40, 55-56). On each occasion, his cell appearance was marked as good or fair (*Id.*). On several occasions he informed the mental health professional that he had no complaints or issues (*Id.* at pp. 2, 31, 33-34, 40). On May 30, 2026, he participated in a telehealth appointment for a mental health evaluation; he noted his main concern was access to his medications, including medications for nerve pain (*Id.* at p. 9-22). He noted that he heard voices and suffered from PTSD (*Id.* at p. 18). The

provider noted that Morris was cooperative, alert, and there were no issues with his behavior (*Id*. at p. 19). On August 10, 2026, Morris participated in an out-of-cell group session (*Id*. at p. 42). He participated in the program and denied any hallucinations or suicidal ideations (*Id*.). He appeared calm and organized (*Id*.). There were two occasions when Morris was unable to participate in group due to restricted movement; on one occasion group was canceled due to an emergency tone in the unit and the other occasion was due to the lack of security available for the group meeting (*Id*. at p. 3, 35). On August 11, 2026, he had a one-on-one session with a mental health provider and communicated concerns that he was not receiving his prescribed medication and had not been scheduled for a telepsych appointment in a few months (*Id*. at p. 43-44).

Morris also had several telepsych appointments. On May 25, 2026, Morris met with a psychiatrist where he noted access to his medications but complained that he had auditory hallucinations (Doc. 50-2, p. 4-6). He also reported an anxious feeling and appeared hyper talkative (*Id*. at p. 4). He denied depressive symptoms or suicidal ideations (*Id*.). He denied other anxiety symptoms beyond the recent anxiousness associated with his medications (*Id*.). The psychiatrist added a new medication and noted that Morris would be monitored for anxiety and auditory hallucinations (*Id*.). After complaining on August 11 about the length of time since his last appointment, Morris was scheduled for an appointment on August 17, 2026 (*Id*. at p. 46). He denied any delusions, hallucinations, or suicidal ideations (*Id*.). He indicated that he remained future oriented and reported no recent outbursts, physical or verbal fights, tickets, or any placement on crisis watch or restrictive housing (*Id*.). He also has been evaluated by the

crisis team on several occasions (Doc. 50-2, pp. 36-39, 51-54). Each time, he was found to be not at risk. During one of those evaluations, on August 19, 2026, Morris noted concerns with his access to mental health services and specific medications (*Id*. at pp. 51-54). The mental health provider noted that his concerns about access to services were inconsistent with the documented contacts as he was seen by providers four times in August 2026 (*Id*. at p. 54).

## Legal Standards

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (2d ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, a plaintiff must make a strong showing of likelihood of success on the merits. *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020). Although he need not prove his claims by a preponderance, a plaintiff must demonstrate "how [he] proposes to prove the key elements of [his] case." *Id.* (quoting *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020)). Once a plaintiff has met this burden, the Court must weigh the balance of harm to the parties if the injunction is granted or denied

and also evaluate the effect of an injunction on the public interest. *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Id*. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . " and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

**Discussion**

Morris seeks out-of-cell exercise and/or outdoor recreation as well as a mental health evaluation. He alleges that Defendants have been deliberately indifferent to both his conditions of confinement and his mental health needs. To state an Eighth Amendment conditions of confinement claim, an inmate must allege that prison officials denied him the "minimal civilized measure of life's necessities" and that they were deliberately indifferent for imposing such a condition. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). "[T]here is a significant difference between a lack of outdoor recreation and an inability to exercise." *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015). An inmate may have an Eighth Amendment claim when he is entirely barred from recreation or provided with little

opportunity for movement. *See Antonelli*, 81 F.3d at 1432 (inmate stated a claim when he was denied recreation for seven weeks and often limited to one hour out of his cell every two weeks); *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013) (frequent lockdowns of substantial periods of time which denied plaintiff all access to recreational opportunities stated a claim); *Delaney v. DeTella*, 256 F.3d 679, 684-85 (7th Cir. 2001) (denial of all exercise opportunities for six months could amount to an Eighth Amendment violation).

As it relates to his claim regarding access to mental health care, Morris must demonstrate that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must show that the defendants' actions were more than negligent, something approaching intentional wrongdoing or recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

In this case, Morris fails to demonstrate a likelihood of success on the merits as to either claim. Although he alleges that he has been housed in his cell for over eight months with no access to out-of-cell activities, Defendant Brandt stated in his declaration that inmates in Morris's unit typically have access to the yard one to two times per week (Doc. 50-1, p. 1). Brandt acknowledged that there have been times when that access was limited due to staffing issues or security concerns, but he noted that the frequency of yard time has increased due to the increase in staffing (*Id.*). Morris's mental health records also indicate that he has had time out of his cell. He has participated in group sessions and had one-on-one and telepsych appointments in the last few months. Again, the records note times when Morris was not allowed to attend group due to safety issues or staff

shortages, but the records demonstrate that he has had several appointments outside of his cell. There is simply no evidence that Morris has been completely barred from access outside of his cell. Likewise, the mental health records show that Morris has had multiple individual sessions with mental health providers, has been evaluated for his mental health and possible suicidal ideations, and has had frequent check-ins at his cell. Defendant Brandt also stated that he personally viewed Brandt's mattress and did not note any bugs (Doc. 50-1, p. 2).

Further, Morris has failed to demonstrate that he is likely to suffer irreparable harm absent an injunction. His mental health records show that he is seen regularly and often has no complaints. Despite Morris claiming in his motion that he has experienced increasing depression, anxiety, and thoughts of suicide, the records from mental health providers and Morris's psychiatrist contradict his claims. Every time he has been evaluated, he has denied suicidal thoughts and indicated that he is future oriented (Doc. 50-2, pp. 46, 54). At his telepsych appointment on August 17, 2026, the doctor noted no signs of hallucinations or delusions (*Id.* at p. 46). Morris's claims otherwise are clearly contradicted by the record.

Finally, Morris asks this Court to direct the prison to provide him with more out-of-cell activities and mental health services, but the Court is hesitant to interfere with the day-to-day operations of the prison. The Court "must afford prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Mays v. Dart*, 974 F.3d 810, 820 (7th Cir. 2020) (quoting *Henry v.*

*Hulett*, 969 F.3d 769, 783 (7th Cir. 2020) (en banc)). Morris's request also seeks a specific action from the prison and such requests are "ordinarily cautiously viewed and sparingly issued." *Id.* at 818 (quoting *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)). Here, Brandt stated that yard times are sometimes canceled due to lack of staffing or security concerns. Morris's mental health records support Brandt's declaration as on at least two occasions the records document the cancellation of group sessions due to lack of staff or a security issue. Prison officials are in the best position to determine when security concerns make leaving the cell unsafe for both inmates and staff; the Court is reluctant to interfere with that judgment—especially when the records contradict Morris's claims. Thus, Morris fails to demonstrate that he is entitled to the relief he seeks.

## Conclusion

For the reasons stated above, Morris's motion for injunctive relief (Doc. 32) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: November 18, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**